## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARK RISHER, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT   1:17-cv-1497 |
| NATIONSTAR MORTGAGE, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

**NOW COMES** Mark Risher ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Nationstar Mortgage, LLC ("Nationstar") and Experian Information Solutions, Inc. ("Experian") (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action seeking redress for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, violations of the Bankruptcy Discharge Injunction ("Discharge Injunction") under 11 U.S.C. §524, and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction is conferred upon this Court by the FCRA pursuant to 15 U.S.C. §1681 et seq., 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.  The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

1

4.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and all of the events or omissions giving rise to the claims occurred in this District.

### PARTIES

5.   Plaintiff is a consumer and natural person over 18-years-of-age who, at all times relevant, owned real property located at 22557 S. Carrie Avenue, Channahon, Illinois 60410 ("subject property").

6.   Defendant Nationstar is a Delaware limited liability company with its principal place of business in Texas. Nationstar is a foreign company in the business of servicing loans and collecting debts owed to others across the country, including Illinois. Nationstar is a furnisher of information to the major credit reporting agencies, including Experian.

7.   Defendant Experian is a corporation incorporated in the state of Ohio. Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois.

### BANKRUPTCY CASE

8.   On July 20, 2009, Plaintiff executed a mortgage and note in the amount of $156,695 ("subject debt" or "subject loan") in favor of Bank of America, N.A. ("BANA"), secured by the subject property.

9.   Sometime thereafter, BANA transferred the subject loan to Nationstar.

10. On September 30, 2015, Plaintiff filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 15-33520 ("bankruptcy").

11. Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to Nationstar, in the amount of $138,897.00, secured by the subject property.

12. On October 3, 2015, because Plaintiff listed Nationstar as a secured creditor, the Bankruptcy Noticing Center ("BNC") served Nationstar with Notice of Plaintiff's Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines.

13. On October 29, 2015, the 341 Meeting of Creditors was held with the Chapter 7 Trustee. No representative of Nationstar appeared at the 341 Meeting of Creditors.

14. On December 29, 2015, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debt.[1]

15. The Order of Discharge expressly stated:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...."

16. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Nationstar or any other party.

17. On January 4, 2016, Plaintiff's bankruptcy case closed and the Trustee was discharged.

18. Plaintiff's personal liability on the subject debt was extinguished via his bankruptcy discharge, thus terminating the business relationship with Nationstar and any of its successors and assigns.

---

[1] Plaintiff did not reaffirm the subject debt.

3

### NATIONSTAR'S POST-DISCHARGE COMMUNICATIONS

19. After the discharge injunction had taken effect, Nationstar sought to collect the subject debt from the Plaintiff personally by sending numerous dunning letters, placing collection calls to Plaintiff's residential telephone and Plaintiff's cellular telephone attempting to collect upon the subject debt.

20. From April 2016 through November 2016, Nationstar sent Plaintiff dunning letters each month attempting to collect monthly payments on the subject debt. Each of the dunning letters stated a "Total Amount Due" followed by a four figure balance.

21. Furthermore, each of the dunning letters included a "Due By" date, instructed Plaintiff on how to make payments to Nationstar, included a payment coupon, and stated "this an attempt to collect a debt and any information obtained will be used for that purpose."

22. On September 18, 2016, a Nationstar representative left an envelope at Plaintiff's home stating:

> "IMPORTANT.....PLEASE CALL NATIONSTAR MORTGAGE CO.....(877) 372-0315.....PLEASE BE READY TO GIVE YOUR ACCOUNT NUMBER."

23. Nationstar attempted to collect on the subject debt despite the fact it had actual knowledge of Plaintiff's bankruptcy filing, and subsequent discharge.

24. In addition to the dunning letters, Nationstar placed collection calls to Plaintiff's cellular telephone ending in 1800 and Plaintiff's residential telephone ending in 7164.

25. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of his cellular telephone number. Plaintiff is and has always been financially responsible for the cellular telephone and its services.

4

26. From July 2016 through the present, Nationstar placed or caused to be placed no less than 37 pre-recorded phone calls to Plaintiff's landline telephone in an attempt to collect on the subject debt.

27. From July 2016 through the present, Nationstar placed or caused to be placed no less than 5 phone calls to Plaintiff's cellular telephone in an attempt to collect on the subject loan.

28. As soon as Nationstar's calls began in July 2016, Plaintiff advised Nationstar that he was represented by counsel, filed a Chapter 7 bankruptcy, and received a bankruptcy discharge. Moreover, Plaintiff advised Nationstar that it should not be contacting him on his cellular phone or his residential phone and requested that Nationstar cease all calls to him.

29. Nationstar responded by indicating that it does not have any record of Plaintiff's bankruptcy.

30. Upon information and belief, Nationstar placed its calls to Plaintiff's cellular phone and residential phone using an automated telephone dialing system; a system that is commonly used in the mortgage servicing industry to collect defaulted loans.

31. Nationstar's collection efforts occurred with actual knowledge of Plaintiff's bankruptcy filing and subsequent discharge.

**DAMAGES CAUSED BY NATIONSTAR'S POST-DISCHARGE COMMUNICATIONS**

32. Plaintiff was unduly inconvenienced and harassed by Nationstar's unlawful attempts to collect the discharged subject debt and suffered emotional distress and mental anguish as Nationstar's collection activities led him to believe he was still liable on the subject loan.

33. Moreover, Nationstar's harassing phone calls have disrupted Plaintiff's daily life and general well-being.

34. Nationstar's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, wasting Plaintiff's time, increased risk of personal injury resulting from the distraction caused by the phone calls, aggravation that accompanies unsolicited telephone calls, harassment, emotional distress, mental anguish, anxiety, loss of concentration, and diminished value and utility of his telephone equipment and telephone subscription services.

35. Concerned about the violations of his rights and invasion of his privacy, Plaintiff sought the assistance of counsel to permanently cease Nationstar's collection efforts.

36. Plaintiff has unnecessarily expended time and incurred costs consulting with his attorneys as a result of Nationstar's unlawful collection efforts.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO EXPERIAN

37. In 2016, after Plaintiff received his discharge and while Nationstar was contacting Plaintiff attempting to collect on the subject debt, Plaintiff pulled his credit reports to make sure all creditors were reporting accurate information in his credit file. Plaintiff discovered that Experian and Nationstar were reporting the subject loan as in default with a high balance, a high past due amount, a monthly payment amount, and multiple post-discharge derogatory information.

38. The reporting of the subject loan was inaccurate, incomplete, and misleading because the subject loan was discharged in Plaintiff's bankruptcy on December 29, 2015, and thus should be reporting with a zero balance, a zero past due amount, a zero monthly payment amount, and no post-discharge derogatory information.[2]

---

[2] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format." The CDIA instructs furnishers to report a discharged debt with a $0 balance, a $0 past due amount, and a $0 monthly payment amount to reflect that the consumer is no longer liable on the discharged debt.

### a. Plaintiff's Dispute Letter to Experian

39. On August 24, 2016, Plaintiff sent a written credit dispute letter to Experian requesting that his credit file be updated to reflect the zero balances of all accounts discharged in his Chapter 7 bankruptcy. Plaintiff also specifically disputed the Nationstar trade line. Plaintiff attached all relevant and supporting bankruptcy documents to his dispute letter to Experian.

40. Among other things, Plaintiff's dispute letter stated the following:

   a. "For your reference I am enclosing a copy of the Order Discharging Debtor entered on 12/29/2015 in my Chapter 7 case;"
   b. "Please consider this letter as a Dispute;"
   c. "Specifically, I am requesting an investigation into the following accounts: Nationstar MTG Acct# 62631**** with a balance if $137,703;"
   d. "In addition, it is my understanding that each of the above creditors is required to investigate my disputes upon receipt of notification from you of this information within five business days of your receipt;" and
   e. "I request that you forward this letter, and the enclosures, to each of the creditors listed above"

41. Upon information and belief, Nationstar received notice of Plaintiff's dispute letter and all relevant information from Experian within five days of Experian receiving Plaintiff's dispute letter. *See* 15 U.S. Code §1681i(a)(2).

### b. Experian's Failure to Correct Inaccurate Information in Plaintiff's Credit File

42. On September 15, 2016, Experian responded to Plaintiff's dispute letter by failing to properly investigate Plaintiff's dispute. Experian failed to review and consider all of the relevant bankruptcy information submitted by Plaintiff to Experian.

43. Specifically, the Experian report revealed that the subject loan was reporting as follows:



44. Despite receiving Plaintiff's detailed dispute letter, Experian and Nationstar continued to report the subject loan with a "Recent balance" of $135,738.00 as of July 2016, a "Status" of Open, a "past due" amount of $1,362.00 as of July 2016, a "Monthly payment" of $1,248.00, and post-discharge derogatory payment history and account balances.

45. More importantly, Experian and Nationstar failed to report the Nationstar trade line as discharged in bankruptcy and failed to report that Plaintiff is disputing the reporting of the subject loan.

46. The reporting of the Nationstar trade line was patently inaccurate, incomplete, and created a materially misleading impression that Plaintiff is still personally responsible for, delinquent, and obligated to pay a monthly payment on the subject loan. However, Plaintiff was no longer personally liable on the subject loan by virtue of his bankruptcy discharge.

### IMPACT OF CONTINUING
### INCORRECT INFORMATION IN PLAINTIFF'S CREDIT FILE

47. As of today, Experian's erroneous reporting of the Nationstar account continues to paint a false and damaging image of Plaintiff. Defendants have yet to update the Nationstar account to accurately reflect the discharged status of the subject loan.

48. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, credit capacity, and his ability to move forward after his bankruptcy discharge.

49. The inaccurate and incomplete reporting of subject loan continues to have significant adverse effects on Plaintiff's credit rating and his ability to obtain financing because it creates a false impression that Plaintiff is in default on the subject loan and is still obligated to pay on the subject loan, rendering Plaintiff a high risk consumer and damaging his creditworthiness.

50. On January 23, 2017, in order to remedy the continued inaccurate and incomplete reporting of the subject loan by the Defendants, Plaintiff drove to the offices of his attorneys to discuss strategies to force Defendants to comply with the FCRA.

51. Plaintiff suffered monetary damages he otherwise would not have incurred had Defendants ceased the inaccurate reporting of the subject loan after Plaintiff's dispute. Specifically, Plaintiff incurred expenses for gasoline to drive to his attorney's offices in Oak Brook, Illinois. Moreover, Plaintiff lost work wages he otherwise would not have lost because he was forced to take time off of work to meet with his attorneys on January 23, 2017.

52. As a result of the conduct, actions, and inaction of the Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit opportunity, time and money expended meeting with his attorneys, tracking the status of his dispute, monitoring his credit file, and mental and emotional pain and suffering.

53. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous credit reporting of the Nationstar trade line.

### NATIONSTAR'S UNLAWFUL ACCESS OF PLAINTIFF'S CONSUMER REPORT

**a. Impermissible Credit Inquiry By Nationstar on Plaintiff's Consumer Report**

54. On September 15, 2016, Plaintiff discovered that Nationstar, through its agent Credco, accessed his Experian consumer report after Plaintiff obtained his bankruptcy discharge.

55. Specifically, Nationstar accessed Plaintiff's Experian consumer report on April 2, 2016. Plaintiff obtained his bankruptcy discharge on December 29, 2015.

56. Upon information and belief, Nationstar accessed Plaintiff's Experian consumer report to facilitate the collection of the subject loan.

57. Moreover, the subject loan was no longer collectible or owed and Plaintiff's bankruptcy discharge ended any business relationship between Plaintiff and Nationstar.

58. Upon information and belief, Nationstar intentionally misrepresented to Experian that Plaintiff was (a) attempting to obtain credit from Nationstar, (b) had a current credit relationship with Nationstar, or (c) had a current business relationship with Plaintiff. Nationstar's misrepresentations and false certifications resulted in Experian releasing highly confidential and sensitive personal information concerning Plaintiff to Nationstar.

59. Nationstar willfully accessed Plaintiff's credit report without the consent or knowledge of Plaintiff.

60. Nationstar's inquiry into Plaintiff's consumer file was recorded on Plaintiff's consumer report and may have decreased Plaintiff's Experian credit score.

61. Moreover, Nationstar's unlawful conduct in accessing Plaintiff's consumer report invaded Plaintiff's privacy.[3]

---

[3] In enacting 15 U.S.C. §1681b, Congress specifically sought to protect consumers from invasion of privacy and created restrictions on access to consumers' sensitive financial information on their credit reports.

## COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST NATIONSTAR)

62. Plaintiff restates and realleges paragraphs 1 through 61 as though fully set forth herein.

63. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

64. Nationstar is a "person" as defined by 15 U.S.C. §1681a(b).

65. Nationstar is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

66. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

67. Nationstar violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Plaintiff and Experian.

68. Nationstar violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian that was sent by Plaintiff in his detailed dispute pursuant to §1681i(a)(2).

69. Had Nationstar reviewed the information provided by Experian, it would have corrected the inaccurate designation of the subject loan and transmitted the correct information to Experian. Instead, Nationstar wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

70. Nationstar violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's dispute to Experian.

71. Nationstar violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information on Plaintiff's credit file. Instead, Nationstar

continued to report the inaccurate, incomplete, and misleading information in Plaintiff's credit file after Plaintiff's detailed dispute.

72. Nationstar failed to conduct a reasonable reinvestigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of Plaintiff's dispute from Experian under 15 U.S.C. §1681i(a)(1).

73. Nationstar violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

74. Despite the blatantly obvious errors in Plaintiff's credit file, and Plaintiff's efforts to correct the errors, Nationstar did not correct the errors or trade line to report accurately. Instead, Nationstar wrongfully re-reported, furnished and re-furnished inaccurate, incomplete, and misleading information after Plaintiff's dispute to one or more third parties.

75. Moreover, Nationstar failed to report the subject loan as discharged in bankruptcy, including the failure to communicate that Plaintiff disputed the reporting of the subject loan.

76. Nationstar's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Plaintiff. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008); *see also Freedom v. CitiFinancial, LLC*, 2016 U.S. Dist. LEXIS 97533 (N.D. Ill. 2016).

77. A reasonable investigation by Nationstar would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported in Plaintiff's credit file.

78. Had Nationstar taken steps to investigate Plaintiff's valid dispute or Experian's request for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff

provided all relevant information regarding his dispute in his request for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

79. By deviating from the standards established by the mortgage servicing industry and the FCRA, Nationstar acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Experian.

**WHEREFORE**, Plaintiff MARK RISHER respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing Nationstar to delete all inaccurate information from Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
#### (AGAINST NATIONSTAR)

80. Plaintiff restates and realleges paragraphs 1 through 61 as though fully set forth herein.

81. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

82. Nationstar is a "person" as defined by 15 U.S.C. §1681a(b).

83. Nationstar is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

84. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

85. The FCRA prohibits any person or entity from using or obtaining a consumer credit report unless the user has a permissible purpose enumerated under the FCRA. *See* 15 U.S.C. §1681b(f).

86. Nationstar requested and received copies of Plaintiff's consumer credit reports maintained by Experian without Plaintiff's consent, or for any permissible purpose, after Plaintiff received a discharge in bankruptcy.

87. Plaintiff's Chapter 7 bankruptcy discharge ended any business relationship between Plaintiff and Nationstar. Nationstar did not have a legitimate business need for Plaintiff's credit reports under the FCRA.

88. Nationstar willfully violated §1681b(f) when it accessed Plaintiff's credit reports without any permissible purpose under the FCRA.

89. Nationstar's violations have deprived Plaintiff of the right to control his own personal information, which is a major aspect of privacy that is protected by the FCRA.

90. As stated above, Plaintiff was severely harmed by Nationstar's conduct.

**WHEREFORE**, Plaintiff MARK RISHER respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

c. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

d.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

e.  Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

f.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT III - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EXPERIAN)

91. Plaintiff restates and realleges paragraphs 1 through 61 as though fully set forth herein.

92. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

93. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

94. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

95. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

96. Plaintiff provided Experian with all relevant information and documentation in his request for investigation and reinvestigation to reflect that he obtained a discharge and is no longer liable for the subject loan.

97. Experian prepared Plaintiff's consumer reports containing inaccurate, incomplete, and materially misleading information by reporting the subject loan with a balance greater than $0, a past due amount greater than $0, a monthly payment amount greater than $0, and post-discharge delinquencies, when in fact Plaintiff had received a bankruptcy discharge, owed a $0 balance on

the subject loan, was not past due on the subject loan, and had no obligation to make monthly payments on the subject loan.

98.  Moreover, Experian prepared an incomplete consumer report of Plaintiff by failing to completely and accurately notate that the subject loan was discharged in Plaintiff's Chapter 7 bankruptcy on December 29, 2015 in violation of 15 U.S.C. §1681c(f).

99.  A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff had obtained a bankruptcy discharge and was no longer liable on the subject loan.

100.  Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. On numerous occasions, Experian has prepared a patently false, incomplete, and a materially misleading consumer report concerning Plaintiff. Experian had actual knowledge of Plaintiff's bankruptcy discharge after it received Plaintiff's detailed dispute letter outlining Plaintiff's discharge.

101.  Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

102.  Had Experian taken any steps to investigate Plaintiff's valid dispute, it would have determined that subject loan was discharged in his bankruptcy on December 29, 2015.[4]

103.  Instead, Experian falsely represented to Plaintiff that it had updated its records to reflect Plaintiff's bankruptcy discharge, and at the same time continued to willfully report and re-report the inaccurate information.

---

[4] Experian's own "Public Record" section was reporting Plaintiff's bankruptcy case. Moreover, the majority of the trade lines in Plaintiff's Experian report were reporting "Discharged through Bankruptcy Chapter 7."

104.  Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Nationstar. Upon information and belief, Experian failed to include all relevant information as part of the notice to Nationstar regarding Plaintiff's dispute that Experian received from Plaintiff.[5]

105.  Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from the Plaintiff and Nationstar with regard to the subject loan.

106.  Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

107.  Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Nationstar that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

108.  Experian violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the subject loan. Experian is required to notate each account that a consumer disputes in each consumer report that includes the disputed information.

109.  Since all of Plaintiff's other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," Experian should have investigated why the Nationstar trade line was reporting anything other than a $0 past due amount, $0 balance amount, or a $0 monthly payment amount.

110.  Moreover, after receiving Plaintiff's detailed dispute, Experian had specific information related to Plaintiff's bankruptcy case and subsequent discharge order, which included the subject loan.

---

[5] As part of Plaintiff's dispute letter, Plaintiff included a copy of his Discharge Order.

111.  Experian knew that the inaccurate designation of the subject loan in Plaintiff's credit file under the Nationstar trade line as delinquent, in default, and with a high balance owed after his bankruptcy discharge would have a significant adverse effect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing his bankruptcy.

112.  Despite actual knowledge that Plaintiff's credit file contained erroneous information, Experian readily sold Plaintiff's inaccurate, incomplete, and misleading report to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

113.  The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

114.  By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with reckless disregard for its duties to report accurate and complete consumer credit information.

115.  It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

116.  Experian's non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's consumer file and reporting Plaintiff's credit information.

117.  Experian acted reprehensively and carelessly by reporting and re-reporting Plaintiff as delinquent, in default, and owing a balance on the subject loan after Plaintiff was discharged in bankruptcy.

118.  Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.

**WHEREFORE**, Plaintiff MARK RISHER respectfully prays this Honorable Court for the following relief:

 a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

 b. An order directing Experian to delete the inaccurate information from Plaintiff's credit reports and credit files;

 c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

 d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

 e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

 f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n(3) and 15 U.S.C. §1681o(2); and

 g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT IV- VIOLATIONS OF THE DISCHARGE INJUNCTION
### (AGAINST NATIONSTAR)

119. Plaintiff restates and realleges paragraphs 1 through 61 as though fully set forth herein.

 **a. Section 11 U.S.C. §524(a)(2)**

120. Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

121. "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc*., 239 F.3d 910, 915 (7th Cir. 2001).

122. Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr. N.D. Ill.1998). Punitive damages of four to ten times the

amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

**b. Nationstar's conduct was perpetual, willful, and wanton**

123.  Nationstar violated the discharge injunction by sending dunning letters to Plaintiff and placing phone calls to Plaintiff's cellular phone and landline phone in an attempt to collect on the subject debt.

124.  Nationstar's violations of the discharge injunction were willful because it had actual knowledge of Plaintiff's bankruptcy as Nationstar was duly scheduled in Plaintiff's bankruptcy schedules and received notice of Plaintiff's bankruptcy filing and subsequent discharge from the Bankruptcy Noticing Center and Plaintiff himself.

125.  Nationstar's conduct demonstrates a clear disregard of the Bankruptcy Code and the protections it provides debtors.

126.  Nationstar should have implemented procedures and trained its employees in order to discourage and prevent willful and wanton violations of the Bankruptcy Code.

127.  Nationstar's conduct demonstrates that it has no system in place to protect the rights of consumers protected by the Bankruptcy Code.

128.  Based on the broad language of the Bankruptcy Code, Nationstar willfully sought to collect the subject debt from Plaintiff in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

**WHEREFORE**, Plaintiff MARK RISHER requests that this Honorable Court:

a.  Hold Nationstar in civil contempt of the Order or Discharge pursuant to 11 U.S.C. §§524 and 105;

b.  Order Nationstar to pay Plaintiff for his actual damages in an amount to be determined by the court as a result of the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

c.  Order Nationstar to pay punitive damages in an amount to be determined by the court for the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

d.  Order Nationstar to pay Plaintiff his reasonable legal fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C.; §§524 and 105; and

e.  Provide such other and further relief as the Court may deem just and proper.

### COUNT V – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT
(AGAINST NATIONSTAR)

129.  Plaintiff restates and realleges paragraphs 1 through 61 as through fully set forth herein.

130.  Plaintiff is a "person" and a "consumer" as defined in ICFA, 815 ILCS 505/(c) and (e) respectively.

131.  Nationstar is engaged in commerce in the State of Illinois with regard to Plaintiff, the subject loan, and the subject property. Nationstar specializes in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in their regular course of business.

132.  The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

### a. Unfairness

133. Nationstar violated 815 ILCS 505/2 by engaging in unfair and deceptive acts or practices by using fraud, deception, and misrepresentations in its attempt to collect the subject loan after Plaintiff's bankruptcy discharge.

134. It was unfair for Nationstar to mislead Plaintiff into believing the subject debt was still owed, when it was not.

135. It was unfair for Nationstar to seek to collect the subject debt from Plaintiff through constant dunning letters, relentless phone calls, and derogatory credit reporting.

136. It was unfair for Nationstar to continue its collection efforts after Plaintiff notified Nationstar that he was represented by counsel and that he obtained a bankruptcy discharge.

137. It was unfair for Nationstar to continue placing calls to Plaintiff after Plaintiff demanded that Nationstar cease calls to his cellular phone and landline phone.

138. It was unfair for Nationstar to send an agent to Plaintiff's home in an attempt to intimidate him into making payments on the subject debt.

139. Nationstar intended that Plaintiff rely on its unfair acts.

### b. Deception

140. Nationstar's demands for payment represents the use of deception, fraud, and false pretense in an attempt to collect a debt because it was not owed at the time the demands for payment were made.

141. Nationstar's demands were deceptive because they were systematically calculated to mislead Plaintiff into believing that the subject debt was owed, when in fact the subject debt was discharged in Plaintiff's bankruptcy on December 29, 2015.

142. Nationstar's demands for payment were systematically calculated to induce payment on a debt that is no longer owed.

143. Such deceptive conduct is harmful to Illinois consumers as it can result in Illinois consumers paying debts that are not owed.

144. Upon information and belief, attempting to collect debts discharged in bankruptcy from Illinois consumers is an unfair and deceptive business practice willfully employed by Nationstar and is done on a mass scale.

145. As pled above, Plaintiff has suffered damages as a result of Nationstar's unlawful collection practices.

146. An award of punitive damages is appropriate because Nationstar's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the continued letters and unwanted phone calls.

**WHEREFORE**, Plaintiff MARK RISHER requests that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against Nationstar;

b. Award Plaintiff his actual damages in an amount to be determined at trial;

c. Award Plaintiff his punitive damages in an amount to be determined at trial;

d. Award Plaintiff his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

e. Award any other relief their Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: February 27, 2017                                            Respectfully Submitted,

                                                       /s/ Mohammed O. Badwan

                                                       Mohammed O. Badwan, Esq. ARDC#6299011
*Counsel for Plaintiff*
Sulaiman Law Group, LTD
900 Jorie Blvd, Suite 150
Oak Brook, IL 60523
Phone: (630) 575-8181
Fax: (630) 575-8188